UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Idle Hands Enterprises, LLC, | |
| Plaintiff, | Case No. 22-cv-02186 (KMM/LIB) |
| v. | **ORDER** |
| No Coast Tattoo, LLC, | |
| Defendant. | |

Plaintiff Idle Hands Enterprises, LLC's ("Idle Hands") brought this action against Defendant No Coast Tattoo, LLC ("NCT") alleging that NCT infringed Idle Hands' federal and common law trademark rights and engaged in unfair competition in violation of the Lanham Act and state law through its use of the service mark "NO COAST TATTOO." NCT has failed to answer or otherwise defend the action in any way. Idle Hands moved for default judgment. [Doc. No. 10.] Following a hearing on the motion at which NCT made no appearance through counsel or any other representative, Idle Hands demonstrated that it served the moving papers on NCT by United States mail. [Doc. No. 19.] For the reasons set forth below, the motion for default judgment is granted in part and denied in part.

**I.      Facts**

Idle Hands is a North Dakota limited liability company that operates a business providing tattooing services under the name "No Coast Tattoo." [Compl. ¶ 5, Doc. No. 2.] NCT is a Minnesota limited liability company that operates a business providing

1

tattooing services under the name No Coast Tattoo, but NCT does not hold a Federal Trademark Registration for the mark "NO COAST TATTOO." [*Id.* ¶ 6.]

Since 2013, Idle Hands has continuously used the business name "No Coast Tattoo" in connection with tattooing services and is the owner of the service mark "NO COAST TATTOO." [*Id.* ¶¶ 7–8; Ex. A, Doc. No. 2-1.] Idle Hands has used the "NO COAST TATTOO" trademark on signage, product labeling, advertising, and correspondence in connection with its business. [Compl. ¶ 9.] As a result of Idle Hands' promotion and use of the "NO COAST TATTOO" mark, the mark is a valuable asset for the Plaintiff and is well known or famous in the State of North Dakota and across the United States. [*Id.*]

NCT began using the business name "No Coast Tattoo, LLC" in 2022. [*Id.* ¶ 10; Ex. B, Doc. No. 2-2.] NCT used the "NO COAST TATTOO" mark in the marketing, sales, and promotion of services that compete with Idle Hands's services, and that those activities have occurred through websites, social media accounts, and advertising and marketing materials. [Compl. ¶ 12; Ex. C, Doc. No. 2-3; Ex. D, Doc. No. 2-4.] Idle Hands notified NCT of its rights to the "NO COAST TATTOO" service mark and demanded that NCT cease all use of the mark. [Compl. ¶ 17.] NCT refused to stop using the "NO COAST TATTOO" mark in connection with the promotion of its business and the sale of its services.[1] [*Id.*] Existing and potential customers have been confused about

---

[1] Consistent with the legal standards addressed below, these and the other relevant factual allegations set forth in the Complaint are treated as having been established for purposes of evaluating the Idle Hands' motion for default judgment.

whether Idle Hands' No Coast Tattoo business is affiliated with NCT's No Coast Tattoo business. [*Id.* ¶ 18.]

The Complaint was filed and a Summons was issued on September 8, 2022. Idle Hands served NCT with the Summons and Complaint on September 9, 2022. NCT failed to file an answer or otherwise respond to the Complaint. On November 23, 2022, Idle Hands filed an application for entry of default and shortly thereafter, the Clerk entered default against NCT.

**II.     Legal Standard**

The entry of default and default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The clerk is required to enter default when a party fails to defend against another party's claims, and that failure is shown by affidavit. Fed. R. Civ. P. 55(a). Such an entry of default is a prerequisite to obtaining a default judgment. *E.g.*, *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (explaining that "entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)").

"[T]he entry of default by the Clerk does not entitle the non-defaulting party to a default judgment as a matter of right." *United States v. $345,510.00 in U.S. Currency*, No. 01-cv-497 (PAM/JGL), 2002 WL 22040, at *2 (D. Minn. Jan. 2, 2002) (citations omitted). Whether to enter default judgment against a party is committed to the district courts' discretion. *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). And although default judgments are generally disfavored because there is a judicial preference for adjudication on the merits, *id.*, a defendant's lack of participation in

3

litigation is a basis for granting default judgment, *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). When a party defaults, "the factual allegations of a complaint (except those relating to the amount of damages) are taken as true." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, to enter a final judgment in favor of the moving party, the court must determine whether the facts from the allegations in the complaint "constitute a legitimate cause of action." *Id.* (quotations omitted); *Marshall*, 616 F.3d at 852–53 (same).

### III. Conclusions of Law

The Clerk has entered default against NTC pursuant to Fed. R. Civ. P. 55(a) following Idle Hands' filing of an affidavit showing that NTC failed to file a responsive pleading or otherwise defend against this action. Therefore, Idle Hands has met one prerequisite of obtaining default judgment in this matter.

The Court must next ask whether the established facts constitute a legitimate cause of action. Idle Hands asserts four claims in its complaint: (1) federal trademark infringement under 15 U.S.C. § 1114; (2) federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (3) common law trademark infringement; and (4) common law unfair competition. All of these claims require somewhat overlapping proof.

For example, to prove trademark infringement under 15 U.S.C. § 1114(1), Idle Hands must show that it owns "a valid, protectable mark and that there is a likelihood of confusion between its mark and the defendant's mark." *B&B Hardware, Inc. v. Hargis*

*Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009). The following six factors inform the likelihood of confusion determination:

> 1) The strength of the trademark owner's mark; 2) the similarity between the trademark owner's mark and the alleged infringing mark; 3) the degree to which the allegedly infringing services competes with the trademark owner's services; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion.

*Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011).

Similarly, to prevail on its federal unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a), Idle Hands must show that it has a valid, protectable mark and that there is a likelihood of confusion between its mark and the mark used by NCT. *Roederer v. J. Garcia Carrion, S.A.*, 732 F. Supp. 2d 836, 863 (D. Minn. 2010).

The Court uses the same likelihood-of-confusion test for common law trademark-infringement and unfair-competition claims as it does for federal trademark infringement. *Am. Dairy Queen Corp. v. W.B. Mason Co., Inc.*, 543 F. Supp. 3d 695, 712 (D. Minn. 2021) (citing *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003)).

The unchallenged facts from the Complaint and Exhibits A through D attached to it constitute legitimate causes of action for each of Idle Hands' claims. Plaintiff owns a federally registered trademark,[2] which is presumed valid. *Aromatique, Inc. v. Gold Seal,*

---

[2] Registration Certificate, Doc. No. 2-1

5

*Inc.*, 28 F.3d 863, 869 (8th Cir. 1994). NCT is using an identical mark to Idle Hands' registered mark. *See Moon Seed LLC v. Weidner*, 604 F. Supp. 3d 780, 791–92 (S.D. Iowa 2022) (finding that nearly identical names used in the same line of business weighed in favor of likelihood of confusion).

Idle Hands points out that both parties offer the same services (tattooing) and asserts that they are, therefore, in direct competition with one another. The fact that NCT's services are identical to those offered by Idle Hands does support a finding of likelihood of confusion. *See Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1043 (D. Minn. 2015) (finding likelihood of confusion where the parties offered similar cleaning services).

The question of the parties' geographic proximity presents a somewhat closer question. To its credit, Idle Hands acknowledges that the parties' businesses are in cities located a few hours apart, but Idle Hands suggests that the distance is not so significant that one could rule out direct competition. [Pl. Mem. at 8, Doc. No. 11.] Here, it is worth noting that Idle Hands primarily seeks injunctive relief in its motion for default judgment.[3] "[T]o enjoin a geographically remote infringer, the registered owner must prove that its trademarked product and the infringing products are being sold in the same geographic area, or that the owner has concrete plans to expand into the infringer's trade area." *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1246 (8th Cir. 1994); *Comidas Exquistos, Inc. v. O'Malley & McGee's, Inc.*, 775 F.2d 260, 262 (8th Cir.

---

[3] Pl.'s Mem. at 11–13; Proposed Order, Doc. No. 14; Compl., Prayer for Relief ¶ 5.

1985) (if an infringer's mark "is confined to a distinct geographic market from [the plaintiff's] and there is no present likelihood that [the plaintiff] will expand into [the infringer's] market, [the plaintiff] is not entitled to relief because there is no danger of public confusion").

Nothing in the Complaint or elsewhere in the record suggests that Idle Hands intends to expand into the St. Cloud area where NCT operates its business. The question comes down to whether the unchallenged facts establish that the parties' services are being offered in the same geographic area. The parties are located within 200 miles of each other. While this is farther apart than in some other cases where competitive proximity is clear, *Zerorez*, 103 F. Supp. 3d at 1043 (identical services offered between competitors in the Minneapolis and St. Paul area), the distance between Idle Hands and NCT is far closer than in others, *Comidas*, 775 F.3d at 261, 262 (finding lack of geographic proximity and no risk of public confusion where the defendant opened a restaurant in Ames, Iowa using the same name that the registered owner had been using for its restaurant in Atlanta, Georgia); *see also JS IP, LLC v. LIV Ventures Inc.*, No. 8:11CV37, 2011 WL 13195982, at *3 (D. Neb. Oct. 13, 2011) (finding the plaintiff's market too geographically remote where its night club was located in Miami Beach, Florida and the alleged infringer's bar was located in Omaha, Nebraska).

Here, the facts established through the Complaint include that Idle Hands had been promoting its tattooing services using the "NO COAST TATTOO" mark for nearly a decade at the time this case was filed. These promotional activities have caused the mark to become well known. Such promotion reached its audience through websites, social

media accounts, and electronic and hardcopy advertising and marketing materials. NCT uses many of the same channels of marketing and advertising to promote its similar services using the same "NO COAST TATTOO" mark, and the business are in cities within a few hours' drive from each other. Moreover, given that people who live in the largely rural area between the two cities are likely to drive to one or the other for tattoo services, the two business are accurately characterized as operating in the same area, albeit at each end of that area. Under these circumstances, the Court finds Idle Hands has sufficiently shown that its services and NCT's services are being marketed, advertised, and sold in the same geographic area, demonstrating a likelihood of confusion.

Idle Hands suggests that the facts show NCT acted with intent to confuse the public because (1) Idle Hands sent NCT a cease-and-desist letter, but NCT thereafter continued using the "NO COAST TATTOO" mark; and (2) Idle Hands has used the mark since in the tattoo business since 2013, so a simple internet search would have alerted NCT that the name was already in use when it created its business in 2022. [Pl.'s Mem. at 14.] However, Idle Hands does not cite any cases finding that intent to confuse can be inferred from the possibility that the registrant's senior use could have been discovered through internet research and the defendant's continued use after receiving a cease and desist letter. *See Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) ("Knowledge of another's product and an intent to compete with that product is not equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion") (cleaned up); 4 McCarthy on Trademarks and Unfair Competition § 23:120 (stating that the majority rule is "[a]n intent to confuse cannot be teased out of a

8

business's decision to continue the challenged use after receiving a cease and desist letter"). The uncontested facts are thus insufficient to establish NCT's intent to confuse the public. Nevertheless, this is not fatal to Idle Hands' claims because "proof of misleading intent is not required for success in an infringement claim, [but] 'the absence of such intent is a factor to be considered.'" *Zerorez*, 103 F. Supp. 3d at 1043 (quoting *Frosty Treats v. Sony Computer Ent. Am. Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005)).[4]

For the foregoing reasons, the Court finds that uncontested facts are sufficient to establish the likelihood of confusion between Idle Hands' mark and the mark used by NCT for each of the four claims asserted in the Complaint. The Court grants default judgment against Defendant No Coast Tattoo LLC on Counts I through IV of the Complaint.

### IV. Relief

Plaintiff requests the following forms of relief, (1) permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), and (2) attorney's fees. For the reasons explained below, the Court grants the injunction, but denies the request for fees.

---

[4] In support of its motion, Idle Hands does not argue that it has shown incidents of actual consumer confusion. The Complaint includes the conclusory assertion that "numerous instances of actual confusion have arisen among existing and potential customers, as to the affiliation of Plaintiff's No Coast Tattoo business and Defendant's No Coast Tattoo business," but no examples of actual confusion are supplied in the pleading and none were submitted in connection with the motion for default judgment. However, proof of incidents of actual confusion is not essential to a trademark-infringement claim, though "it is positive proof of likelihood of confusion." *SquirtCo v. Seven Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).

### A. Injunctive Relief

The Court is permitted to grant an injunction, "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a); *see also Zerorez*, 103 F. Supp. 3d at 1047 (quoting § 1116(a)). To obtain a permanent injunction, a party must show: "1) they have suffered an irreparable injury; 2) legal remedies such as monetary damages are inadequate to compensate for the injury; 3) the balance of hardships between the plaintiff and the defendant warrant an equitable remedy; and 4) the public interest would not be disserved by a permanent injunction." *Zerorez*, 103 F. Supp. 3d at 1047. Idle Hands has met its burden here.

Because the Court has found that Idle Hands demonstrated a likelihood of confusion, the Court also finds that the nature of trademark rights and the harm involved from the infringing use support a finding of irreparable injury and inadequacy of monetary damages. *Id.* ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [Idle Hands] can demonstrate a likelihood of consumer confusion.") (quoting *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987)); *id.* at 1047–48 (discussing how reputational harm and damage to goodwill flowing from likelihood of confusion are difficult to quantify such that monetary damages may be inadequate).

In addition, Idle Hands' ownership vests it with exclusive use of the "NO COAST TATTOO" mark. *Id.* at 1048 ("Trademarks vest a registrant with the exclusive use of that mark."). NCT's infringing use of the same mark undermines the goodwill and name recognition that Idle Hands has spent years developing. Allowing NCT to continue use of

10

the mark could allow it to unjustifiably benefit from the likelihood that the tattoo-seeking public in the relevant market would perceive an affiliation between the parties' businesses. The public interest also favors a permanent injunction because "the public interest is served by preventing customer confusion in the marketplace." *Zerorez*, 103 F. Supp. 3d at 1048. For these reasons, the Court grants Idle Hands' request for injunctive relief.

### B. Attorney's Fees

However, the Court finds that Idle Hands has not shown an entitlement to recover attorney's fees in this matter. The Court is authorized to award reasonable attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a); *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 771 (8th Cir. 2012). Whether to award attorney's fees is left to the discretion of the district court, and that discretion remains "even if [the court] finds a case to be exceptional." *First Nat'l Bank in Sioux Falls*, 679 F.3d at 771.

Idle Hands is correct that the Eighth Circuit has indicated that where a court finds a defendant's infringement was willful and deliberate, the court may determine that it has before it an "exceptional case" where an award of fees is appropriate. *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1013; *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 716 (8th Cir. 1980); *First Nat'l Bank in Sioux Falls*, 679 F.3d at 771. However, beyond the fact that Idle Hands sent a single cease-and-desist letter to NCT, and NCT thereafter continued using the "NO COAST TATTOO" mark, there is nothing in this record to convince the Court that this is an exceptional case where

attorney's fees should be awarded. *Cf. Zerorez*, 103 F. Supp. 3d at 1049–50 ("[Defendant] received two cease and desist letters, direct advice from its counsel, and a court order explicitly prohibiting the use of confusingly similar terms to the protected mark. Despite the clear and repeated warnings, [Defendant's] infringement persisted.").

Accordingly, the motion is denied to the extent that it seeks an award of attorney's fees.

V.     **Order**

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Default Judgment [ECF 10] is **GRANTED IN PART** and **DENIED IN PART** as follows.

2. Plaintiff's request for a permanent injunction is **GRANTED**.

    a. Defendant No Coast Tattoo, LLC, its agents, servants, employees, attorneys, successors, and assigns are permanently enjoined and restricted from directly or indirectly using the designation "NO COAST TATTOO" or any other mark, word, or name similar to "NO COAST TATTOO" which is likely to cause confusion, mistake or deception.

    b. Defendant No Coast Tattoo, LLC, its agents, servants, employees, attorneys, successors, and assigns shall immediately and permanently cease all use of Plaintiff's trademark and confusingly similar variations of Plaintiff's trademark.

3. Plaintiff's request for attorney's fees is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 15, 2023        *s/Katherine Menendez*
                                                         Katherine Menendez
                                                         United States District Judge